UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| WILLIAM F. HOLDNER DBA HOLDNER FARMS, | Case No. 3:15-cv-2039-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| KATY COBA, DIRECTOR OF THE OREGON DEPARTMENT OF AGRICULTURE, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, DICK PEDERSON, DIRECTOR OF THE OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, IN HIS INDIVIDUAL AND HIS OFFICIAL CAPACITY, | |
| Defendants. | |

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff William Holdner ("Holdner"), appearing *pro se*, filed a civil rights action against

various Oregon state officials challenging the state's authority to regulate livestock operations on his land. The court interpreted the complaint filed on October 29, 2015 (the "Complaint") to allege three claims: 1) deprivation of Holdner's constitutional due process rights under 42 U.S.C. § 1983 ("Section 1983"); (2) Oregon's Department of Environmental Quality ("DEQ") and Department of Agriculture ("ODA") acted outside their enforcement authority under the Clean Water Act; and 3) Holdner's land patent bars the state from regulating water quality on his land. The court granted a motion to dismiss filed by defendants Katy Coba, Director of the ODA, and Dick Peterson, Director of the DEQ (collectively "Defendants") finding Holdner lacked standing, the claims are barred by claim preclusion, issue preclusion, and Eleventh Amendment immunity, and Defendants are entitled to qualified immunity. Defendants now seek to recover $23,803.50 in attorney fees under 42 U.S.C. § 1988 ("Section 1988"). Holdner has not responded to Defendants' motion for attorney fees.

The court finds Holdner's filing of this lawsuit was frivolous, unreasonable, or without foundation and Defendants are entitled to recover attorney fees under Section 1988, but some of the requested fees are not recoverable or reasonable. Accordingly, Defendants' motion for attorney fees is[1] granted in part and Defendants are awarded attorney fees in the amount of $13,723.80.

*Legal Standard*

I. Award of Attorney Fees under Section 1988

The standard for awarding attorney fees to a prevailing defendant in a civil rights action is governed by Section 1988. The provisions of Section 1988 "give a court the discretion to award attorney's fees to a prevailing defendant in certain civil rights lawsuits if the court finds that the

---

[1]The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

plaintiff's action is 'frivolous, unreasonable, or without foundation.'" *Miller v. Los Angeles Cty. Bd. of Educ.*, 827 F.2d 617, 619 (9th Cir. 1987)(quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421 (1978)[2]).  This standard is applied more stringently, however, where a plaintiff is proceeding *pro se*.  *Miller*, 827 F.2d at 620 ("The *Christiansburg* standard is applied with particular strictness in cases where the plaintiff proceeds pro se.")(citing *Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980)).  When evaluating the appropriateness of an award under Section 1988, the court must consider the *pro se* plaintiff's "ability to recognize the merits of his or her claims," with the understanding a *pro se* plaintiff is less able to do so than a plaintiff represented by counsel.  *Miller*, 827 F.2d at 620.

## II.  Amount of Reasonable Attorney Fees

When determining a "reasonable" award under Section 1988, courts first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate."  *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1064 (9th Cir. 2006).  The court must then decide whether to enhance or reduce the figure by evaluating the factors discussed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), not already considered in calculation of the lodestar figure.  The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client,

---

[2]*Christiansburg* set forth the standard for an award of attorney fees to prevailing defendants in Title VII cases, which standard was adopted with respect to Section 1988 in *Hughes v. Rowe*, 449 U.S. 5 (1980)(per curiam).

and (12) awards in similar cases.

*Id.* at 70.  Only applicable factors must be addressed.  *Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983).

"[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010).  The district court has "considerable discretion" in determining the reasonableness of a fee award.  *Webb v. Ada County*, 195 F.3d 524, 526-7 (9th Cir. 1999).

*Discussion*

I.  Award of Attorney Fees under Section 1988

Defendants contend an award of attorney fees to a prevailing defendant is appropriate here as Holdner "initiated this litigation fully aware that his claims, previously tried in multiple venues, had not only been *adjudicated* against him, but had also previously been *precluded*."  (Defs.' Mot. for Costs and Attorney Fees, ECF No. 47, at 5.)  Defendants argue the court should consider the previous litigation and rulings as evidence of Holdner's knowledge of the probable result in this case and find Holdner's claims were frivolous, unreasonable, and without foundation.

The legislative purpose of section 1988 is "to promote vigorous private enforcement of civil rights. . . ." *Tutor-Saliba*, 452 F.3d at 1063.  Consequently, "[p]laintiffs prevailing in a civil rights action should ordinarily recover attorneys' fees unless special circumstances would render such an award 'unjust.'  However, a prevailing defendant should not routinely be awarded attorneys' fees simply because he has succeeded, but rather only where the action is found to be 'unreasonable, frivolous, meritless, or vexatious.'" *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.

1994)(citing *Roberts v. Spalding*, 783 F.2d 867, 874 (9th Cir. 1986)).  The court need not determine the claim was brought in "subjective bad faith" to award attorney fees to a defendant where such fees are otherwise appropriate.  *Christiansburg*, 434 U.S. at 421.

In *Christiansburg*, the Court identified "two strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant."  *Id.* at 418.  First, the private plaintiff is the enforcement mechanism chosen by Congress and, second, the fees awarded a successful plaintiff are assessed against a violator of federal law.  *Id.*  Accordingly, a successful defendants seeking fees must rely on different equitable considerations.  *Id.* at 419.

The legislative history of Title VII made clear "that while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis."  *Id.* at 420.  However, the Court highlighted the importance of avoiding the logic of hindsight:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.  No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.  Decisive facts may not emerge until discovery or trial.  The law may change or clarify in the midst of litigation.  Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421-22.  Even tenuous circumstances furnishing a basis for a claim may defeat a request for attorney fees by a prevailing defendant.  *Karam v. City of Burbank*, 352 F.3d 1188, 1196 (9th Cir. 2003).

This is the third action initiated in this court by Holdner asserting claims based on Oregon's enforcement of water quality standards against his livestock operation.    In 2006, the ODA became concerned Holdner was discharging animal waste from his property in a manner likely to send it into a nearby creek.  *Holdner v. Coba*, Civ. No. 09-979-AC, 2011 WL 2633165, at *3 (D. Or. July 5, 2011)("*Holdner I*").  As a result, the ODA issued a civil citation for pollution violations against Holdner on three separate occasions – March 9, 2007, February 10, 2009, and June 15, 2009.  *Id*. Additionally, in 2010, the Oregon Department of Justice ("DOJ") indicted Holdner on three felony and twenty-five misdemeanor counts of water pollution.  *Id*. at *3.  Holdner requested administrative review of the civil citations, arguing his ranch was exempt from state and federal regulation, and he moved to dismiss the criminal charges on the ground the ODA exceeded its authority in enforcing the federal statute.  *Id*. at *3; *see also  Holdner v. Kroger*, No. 3:12-cv-01159-PK, 2012 WL 6131637, at *2 (D. Or. Nov. 6, 2012)("*Holdner II*").  The administrative hearing resulted in final orders in the agency's favor and the court denied Holdner's motion in the criminal proceedings. *Holdner I*, 2011 WL 2633165, at *3; *Holdner II*, 2012 WL 6131637, at *3.

On August 20, 2009, Holdner filed an action against the ODA complaining about the issuance of the civil citations.  *Holdner I*, 2011 WL 2633165, at *1.  Holdner again asserted the ODA exceeded its authority under federal statues and sought to enjoin it from taking further enforcement actions against him.  *Id*. at *4.  After directing Holdner to amend his complaint twice, the court determined Holdner was alleging a Section 1983 action for violation of his rights to procedural due process. *Id*.  It then granted summary judgment to the ODA on the Section 1983 claim, finding Holdner failed to allege a violation of a fundamental right or offer evidence of the

ODA's involvement in the conduct comprising such violation.[3]  *Id*. at *7-*8.

Holdner filed a second action on June 28, 2012, once again alleging various Oregon agencies lacked authority to regulate water quality and asserting a single claim for declaratory relief under a slightly different theory than alleged in *Holdner I*.  *Holdner II*, 2012 WL 6131637, at *2. Specifically, Holdner alleged the United States Environmental Protection Agency never granted authority to the State of Oregon to administer the National Pollution Discharge Elimination System and, absent such authority, Oregon's regulatory and permitting scheme governing animal feeding operations was *ultra vires*.  *Id*. at *3.  Judge Papak denied the defendants' motion to dismiss on the grounds of mootness and the *Rooker-Feldman* doctrine, but granted the motion finding Holdner's claims barred by the *Younger* abstention doctrine and claim preclusion.  *Id*. at *3-*7.

Judge Papak set forth the elements of the claim preclusion doctrine – identity of claims, final judgment on the merits, and identity or privity between the parties – and described the doctrine as "[barring] litigation of any claims that were raised or could have been raised in the prior action" where these elements are present.  *Id*. at *7.  He then reasoned:

> Looking for the moment only at Holdner's prior state administrative and criminal proceedings, it is clear that Holdner could easily have raised his current theory that the ODA lacks authority to enforce the Clean Water Act in either of those proceedings, but only now attempts to pursue further litigation on that "theory of relief."  Similarly, Holdner could have raised his *ultra vires* theory in the prior federal case, in which he contended that the ODA exceeded its regulatory authority for other reasons.  Moreover, there is no doubt that Holdner's prior proceedings were litigated to final judgment on the merits.  Finally, the current defendants in this action are surely in privity with the State of Oregon, a party to Holdner's criminal proceeding, since they are all departments or agents of the state.

Holdner's single argument against the application of claim preclusion is that the legal

---

[3]The court also granted summary judgment on Holdner's claim for injunctive relief finding it barred by the Younger doctrine.  *Id*. at *6.

theory central to his case – that Oregon's entire water pollution control scheme is ultra vires – was not previously litigated in any other proceeding.  But Holdner misunderstands the nature of federal and Oregon claim preclusion doctrines, both of which recognize preclusion where a claim or theory *could have been* raised in an earlier proceeding, but nevertheless was not.  Consequently, even though Holdner has now discovered a new legal theory explaining why he was not subject to the Oregon NPDES permitting requirement for CAFO's, he is precluded from advancing it here because he could have raised it in any number of earlier proceedings.

*Id*. at *7 (internal quotations omitted).

Holdner filed the instant action, the third in this court, on October 29, 2015, once again complaining about Defendants' regulation of the livestock operations on Holdner's property. (Compl. ECF No. 1.)  The court granted Defendants' motion to dismiss on the grounds, among others, of claim preclusion.  *Holdner v. Coba*, Civ No. 3:15-cv-2039-AC, 2016 WL 3102053 (D. Or. June 1, 2016) ("*Holdner III*").  The court found *Holdner III* to be substantially similar to *Holdner I* and *Holdner II*, and to allege "claims which were raised or should have been raised in prior administrative and criminal proceedings."  *Holdner III*, 2016 WL 3102053, at *3.  It then noted "Judge Papak clearly stated that plaintiff's claims would be barred by claim preclusion" and "[a]s plaintiff's prior proceedings were litigated to final judgment on the merits and the defendants in this action are in privity with the State of Oregon, a party to plaintiff's criminal proceeding, plaintiffs claims are barred by claim preclusion."  *Id*.

In light of Judge Papak's express instruction in *Holdner II* that any claim based on Defendants' regulation of Holdner's livestock operation, regardless of the theory, is barred by claim preclusion, Holdner's attempt to litigate such claims in *Holdner III* was frivolous, unreasonable, and without foundation.  The claims alleged in *Holdner III* were barred, *ab initio*, by the holding in *Holdner II* and could not be considered viable at the time they were filed.  While the court must give

Holdner, a *pro se* plaintiff untrained in the law, the benefit of the doubt with regard to the validity

of his claims, Holdner had clearly been warned any additional complaints attacking the legality of

Defendants' regulation of Holdner's livestock operation would not succeed.  Consequently, the court

finds Defendants are entitled to recover reasonable attorney fees on Holdner's Section 1983 claim,

under Section 1988.

This finding is consistent with the Ninth Circuit's conclusion that "repeated attempts by a

pro se plaintiff to bring a claim previously found to be frivolous militates in favor of awarding

attorney's fees to a prevailing defendant.  In such a situation, it is entirely appropriate to hold the

plaintiff responsible for knowing that the claim is groundless."  *Miller*, 827 F.2d at 620.  While

Judge Papak did not find Holdner's claims frivolous in *Holdner II*, he did clearly find them to be

unreasonable and without foundation.

Additionally, the court's conclusion does not contradict the opinion of most courts that

dismissal of a *pro se* plaintiff's complaint based on claim preclusion is not a proper basis for an

award of attorney fees under Section 1988, as recognized by Judge Brown in *Gleason v. Gilmour*,

No. 08-CV-552-BR, 2011 WL 1458012, at *2 (D. Or. April 12, 2011).  The justification for such

holding is that a *pro se* plaintiff's failure to understand the complex analysis of subtle legal

deficiencies required to determine whether claim preclusion applies does not support a finding the

action was frivolous, unreasonable, or without foundation.  *Id*. at *2-*3.  Here, however, Holdner

did not need to engage in such analysis because Judge Papak had done so for him.  Holdner needed

only to read Judge Papak's ruling in *Holdner II* to know *Holdner III* was not viable.

While the court, viewing the Complaint broadly in light of Holdner's *pro se* status,

considered Holdner to assert three claims, the allegations of the Complaint universally support a

single claim under Section 1983.  Holdner identifies his claim as one under Section 1983 and alleges he:

> has been deprived by Defendants of rights guaranteed by the United States Constitution under the Fourteenth Amendment.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(Compl. at 7.)  The allegations in the Complaint all relate to the deprivation of Holdner's property rights.  Accordingly, the court views the Complaint to state a single claim under Section 1983, albeit under alternative theories.  Defendants are entitled to recover attorney fees for defending the Complaint in its entirety.

## II.  Reasonable Attorney Fees

### A.  Reasonable Hourly Rate

Defendants seek $23,803.50 in attorney fees for 157.30 hours expended in defending this litigation.  During the relevant period, Defendants billed at the legislatively approved hourly rate of $175.00 for attorneys, $90.00 for paralegals, and $55.00 for law clerks.  (Hammond Decl. Ex. 31.)

A reasonable hourly rate is determined by looking to the "prevailing market rates in the relevant community" as well as the skill, experience, and reputation of the lawyer.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984)  The party requesting the fees "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation."  *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).  The best evidence of the prevailing rate in Oregon is the periodic Economic Survey conducted by the Oregon State Bar.

*Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002).

Defendants represent Frank Hammond, Senior Assistant Attorney General ("Hammond"), has been practicing in Oregon since 1985. (Hammond Decl. ¶ 1.) Defendants do not provide any other information on the skill, experience, or reputation of Hammond, Rachel Bertoni ("Bertoni"), Larry J. Knudsen, or Renee Stineman ("Stineman"), the lawyers representing Defendants in this action. Rather, Defendants argue evidence that seventy-five percent of Oregon attorneys charge an hourly rate of $180.00 or more establishes the $175.00 hourly rate charged by Defendants' counsel is reasonable. The court agrees.

The Oregon State Bar 2012 Economic Survey reveals the average hourly rate billed by attorneys in private practice in Oregon is $242, while the average for attorneys practicing in the Upper Willamette Valley, which includes Salem, Oregon, is $218. (Hammond Decl. Ex. 29, at 2.) The median hourly rates are $225.00 and $208.00, respectively, and the hourly billing rate for the twenty-fifth percentile are $180.00 for Oregon and $170.00 for Salem. (Hammond Decl. Ex. 29, at 2.) The $175.00 hourly rate requested by Defendants for all attorney work is reasonable in light of the rates charged by other attorney in Oregon and the Salem area. This is especially true with regard to Hammond, an attorney with more than thirty years of experience, who would be expected to bill closer to the average hourly rates of $282.00 or $270.00 for attorneys with similar experience in Oregon or the Salem area. (Hammond Decl. Ex. 29, at 3.)

Similarly, the $90.00 hourly rate for Shannon Ross ("Ross"), a paralegal, is reasonable in light of evidence the average billing rate for paralegals in the region including Oregon is $133.00. (Hammond Dec. Ex 30, at 5-11.) Finally, the court finds the $55.00 per hour charged for law clerk services, which includes only the actual costs for personnel, services, supplies, and overhead is

reasonable as well.  (Hammond Decl. Ex. 31, at 1.)

*B. Hours Reasonably Billed*

While the court finds the hourly rates requested to be reasonable, it finds the hours requested to be excessive for various reasons.  These reasons include block-billing, duplicative billing, billing for clerical work, and excessive hours expended on the motion to dismiss in light of its similarity to the motion to dismiss filed in *Holdner II*.

1.  Block-Billing

This district has specifically cautioned against block-billing[4] because this practice greatly hinders the court's ability to assess the reasonableness of time expended.  *See* Message from the Court Regarding Fee Petitions (last updated February 18, 2016) *available at* http://ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions.  Where a substantial amount of time is billed for a variety of tasks, the court cannot examine the reasonableness of each task.

Despite cautioning against this practice, the court may excuse this method when the billing period is no more than three hours.  *See Sterling Savings Bank v. Sequoia Crossing, LLC*, Civ. No. 09-555-AC, 2010 WL 3210855, at *5 (D. Or. Aug. 11, 2010)("[w]hile billing periods of three hours or more may be subject to exclusion, the court is more lenient with smaller blocks of time, which it may divide by the total number of included tasks in order to find the length of time required for each individual task.")  Accordingly, the block-billed time requested over the three-hour maximum will be reduced by fifty percent.  Such a reduction is warranted because the vague nature of the entry

_____

[4]"Block-billing" refers to "any single time entry of three of more hours containing four or more tasks, or containing only two tasks where one of the tasks could have taken from a small to a substantial period of time."  *Lemus v. Timberland Apartments, LLC*, 876 F. Supp. 2d 1169, 1180 (D. Or. 2012)(citation omitted).

makes it impossible for the court to make any assessment as the reasonableness of the time expended.

The relevant block-billing entries include a 3.00 hour entry by Bertoni on November 23, 2015; a 7.00 hour entry by Bertoni on November 24, 2015; a 4.20 hour entry by Bertoni on December 28, 2015; a 4.00 hour entry by Hammond on January 4, 2016; a 4.70 hour entry by law clerk Ben Eckstein ("Eckstein") on January 5, 2016; a 3.70 hour entry by Bertoni on February 1, 2016; a 4.00 hour entry by Bertoni on June 21, 2016; a 7.00 hour entry by law clerk Rachel Moore ("Moore") on June 21, 2016; two 8.00 hour entries by Moore on June 24 and 27, 2016; and a 4.80 hour entry by Bertoni on August 9, 2016. The court reduces the attorney hours by 15.35 and the law clerk hours by 13.85, resulting in a decrease of $3,448.00.

2. Duplicative Billing

A careful review of the billing records reveals duplicative billing. "The courts of this district routinely exclude from the lodestar calculations any time entries indicating that more than one lawyer performed the same task." *Whitworth v. Nat'l Enterprise Systems, Inc.*, No. CV 08-968-PK, 2010 WL 1924505, at *6 (D. Or. April 21, 2010). "When attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill the conference to the client, not both attorneys. The same good 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or attend oral argument." *Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001). *See also Malbco Holdings, LLC v. AMCO Ins. Co.*, No. CV-08-585-ST, 2010 WL 2572849, at *12 (D. Or. June 22, 2010)("[H]aving more than one attorney involved in the case, which necessitates a certain amount of attorney conferencing, while understandable, makes it unreasonable to shift the charges for both

attorneys to the other party.")

Hammond and Bertoni both billed for the same meeting or conference on November 23, 2015; November 30, 2015; December 3, 2015; December 28, 2015; December 29, 2015; December 30, 2015; January 4, 2016; January 12, 2016; January 25, 2016; February 1, 2016; February 3, 2016; March 1, 2016; March 2, 2016; March 3, 2016; March 23, 2016; June 20, 2016; June 22, 2016; August 4, 2016; August 8, 2016; August 9, 2016; and August 12, 2016. After calculating the time attributable to the meeting or conference in the block-billing entries, the court has determined 12.68 hours of attorney time should be deducted from the amount requested. This amount represents the greater amount of time billed by the two attorneys for such meeting or conference.[5] Additionally, on February 5, 2016, both Hammond and Bertoni billed for reviewing a court order granting a stay of discovery; on February 23, 2015, both Hammond and Bertoni billed for reviewing Holdner's surreply; on June 1, 2016, both Hammond and Bertoni billed for reviewing the court's opinion and on June 20, 2016, both attorneys billed for reviewing Holdner's objections to such opinion; and on June 21 and 22, and August 4 and 8, 2016, both Hammond and Bertoni billed for reviewing the same court order, opinion or judgment. Accordingly, 2.12 hours of attorney time representing duplicative billings for review of pleadings will be deducted from the attorney fees requested. In all, Defendants' request for attorney fees will be decreased by 14.8 attorney hours in the amount of $2,590.00 for duplicative billing.

---

[5]The court notes on December 29, 2015, Hammond billed .10 hour for a conference with Bertoni while Bertoni billed 3.60 hours for the the same conference. The court has eliminated the 3.60 hours billed by Bertoni, which it finds not only duplicative but also unreasonable for a conference represented to last only .10 hours by Hammond, the discrepancy not otherwise explained.

### 3.  Clerical Work

It is well-settled the court may reduce an attorney's hours for time spent performing clerical work.  *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir.1992), *vacated on other grounds*, 984 F.2d 345 (1993); *see Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (noting the dollar value of non-legal work "is not enhanced because it is performed by a lawyer).  "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling*, 2010 WL 3210855, at *7.  Costs associated with clerical tasks are generally considered overhead expenses reflected in an attorney's billing rate.  *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-cv-00239-HZ, 2014 WL 837389, at *8 (D. Or. Mar. 3, 2014); *see also Nadarajah v. Holder,* 569 F.3d 906, 921 (9th Cir.2009)(reducing fees for clerical tasks such as filing and organization).

Hammond billed 2.52 hours[6] for clerical work, such as "supervising filing" "correct docketing," "organize file," "resolve docketing issue," and "organize correspondence."  Bertoni billed 3.2 hours for pulling exhibits from PACER, getting documents to support the motion to dismiss, preparing materials for work over the weekend,[7] and archiving emails.  This represents a total of 5.72 attorney hours expended on clerical work and a decrease of $1,001.00 in the attorney fees requested.  Additionally, Ross billed .73 hours to "set up file," resulting in an additional reduction of $65.70 for clerical work improperly billed by a paralegal.  *See Sterling*, 2010 WL

---

[6]Again, the time attributable to clerical work in block-billing entries was determined by dividing the hours billed by the total number of included tasks in order to find the length of time required for each individual task.

[7]Bertoni did not bill any hours during the weekend for work on this case.

3210855, at *7 (treating attorneys and paralegals similarly with regard to clerical work).

### 4. Prior Work

Defendants filed a motion to dismiss on grounds previously asserted in *Holdner II*, namely claim preclusion and issue preclusion. Portions of the memorandum in support of the motion to dismiss in this action are virtually identical to the memorandum filed in *Holdner II*, such as the background facts and the arguments supporting claim preclusion and issue preclusion. In fact, nearly half of the thirty-page memorandum filed in this action substantially mirrors the previous memorandum. Taking into account the five pages devoted to the caption, table of contents and table of authorities, only twelve of the remaining pages raise new arguments in original language.[8] Additionally, the declaration submitted in support of the motions to dismiss in this case and *Holder II* are somewhat similar, with the declaration filed in this case including additional documents created after *Holdner II*. Defendants' reply and sur-reply filed in support of their motion to dismiss were unique.

Bertoni spent approximately 17 hours on the motion to dismiss, while Hammond spent approximately 11 hours, Stineman approximately 1 hour, and Eckstein approximately 5 hours on the same motion, for a total of 34 hours. In light of the extensive use of the memorandum filed in *Holdner II* and the creation of only twelve pages asserting new arguments, the court finds the 34 hours of attorney and clerk time billed for preparing the motion to dismiss, supporting declaration, and exhibits to be excessive and unreasonable. Consequently, the court reduces the amount requested by fifty percent, finds 17 hours of attorney and clerk time reasonable, and decreases the amount of attorney fees requested by $2,975.00.

---

[8] Defendants' reply and sur-reply filed in support of their motion to dismiss were unique.

III.  Conclusion

Holdner's filing of this lawsuit was frivolous, unreasonable, or without foundation and Defendants are entitled to recover attorney fees under Section 1988.  However, some of the requested attorney fees are unreasonable or not recoverable.  Specifically, Defendants' attorney fees request will be reduced by $3,448.00 for block-billing entries, $2,590.00 for duplicative billings, $1,066.70 for clerical work, and $2,975.00 for hours unreasonably attributed to preparation of the motion to dismiss, for a total deduction of $10,079.70.  The court finds Defendants are entitled to recover attorney fees in the amount of $13,723.80.

*Conclusion*

Defendants' motion (ECF No. 47) for attorney fees is GRANTED, in part.  Defendants are entitled to an award of attorney fees under Section 1988 in the amount of $13,723.80.

DATED this 9th day of November, 2016.


                                    /s/ John V. Acosta
                                    JOHN V. ACOSTA
                                    United States Magistrate Judge